**NUCLEAR DATA, INC., a corporation, Plaintiff,**

v.

**ATOMIC ENERGY COMMISSION, an Executive Agency of the United States, et al., Defendants.**

**Nuclear-Chicago Corporation, a corporation, Intervenor-Defendant.**

No. 71 C 2608.

United States District Court, N. D. Illinois, E. D.

May 16, 1972.

 

Peter V. Fazio Jr., Robert J. Vollen, of Schiff, Hardin, Waite, Dorschel & Britton, Chicago, Ill., for plaintiff.

James R. Thompson, U. S. Atty., Chicago, Ill., for defendants.

Sidley & Austin, Chicago, Ill., for Anger.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on defendants' motion to dismiss pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

Plaintiff, Nuclear Data, Inc. (hereinafter referred to as "Nuclear Data") is a Delaware corporation having its principal place of business in Illinois. Defendant Atomic Energy Commission (hereinafter referred to as the "AEC") is an Executive Agency of the United States established pursuant to 42 U.S.C. § 2031. Defendant Roland A. Anderson (hereinafter referred to as "Anderson") is an officer and employee of the United States who served, at all times relevant to this suit, as Assistant General Counsel for Patents of the AEC. Defendant Hal O. Anger (hereinafter referred to as "Anger"), a resident of Berkeley, California, is a scientist employed by the Donner Laboratory of the University of California at Berkeley. Intervenor-Defendant Nuclear-Chicago Corporation (hereinafter referred to as "Nuclear-Chicago") is a Delaware corporation with its principal place of business in Illinois.

The facts in the instant case are fairly simple. Anger, while employed under a contract between the AEC and the University of California,[1] allegedly invented a medical device utilizing nuclear material. The contract between the AEC and the University gave the AEC the

> "sole power to determine whether or not and where a patent application

---

1. Contract No. W–7405–Eng–48.

shall be filed, and to determine the disposition of the title to and rights under any application or patent that may result."

Pursuant to an application filed on January 2, 1958, United States Letters Patent No. 3,011,057 (hereinafter referred to as the "057 patent") issued to Anger on November 28, 1961, covering his purported discovery. In connection with the issuance of the (057) patent, the AEC, acting through Anderson, reserved to the Government exclusive rights to use the 057 patent for both governmental and non-governmental purposes. By the terms of this license, the Government had the power to license others, including Plaintiff, to use the 057 patent in whatever manner it might deem desirable, whether through sublicensing manufacturers or otherwise.

Three years after the issuance of this license, the AEC, acting through Anderson, executed a document which by its terms cancelled and revoked the first license and divested the Government of all rights in the 057 patent except for its right to use it, on a non-exclusive basis, for governmental purposes only. The second license agreement is alleged to have corrected the first license agreement which "through mutual error in the preparation and execution" accorded the Government "certain additional exclusive rights" in the 057 patent. The instant suit is for judicial review of the administrative action of executing the second license.

The instant motion to dismiss is made by defendants AEC and Anderson. It contends that there are five separate grounds for dismissal:

1. This Court lacks jurisdiction over the subject matter;

2. Plaintiff lacks standing to bring the instant suit;

3. The agency determinations in question are committed to agency discretion and are therefore unreviewable;

4. The instant suit is not timely; and

5. The instant suit is an unconsented suit against the Government.

Each of these contentions will be discussed separately.

I. DOES THIS COURT HAVE JURISDICTION OVER THE SUBJECT MATTER IN THE INSTANT SUIT?

Plaintiff alleges that this Court has jurisdiction over the subject matter in the instant suit under the following statutory provisions: 5 U.S.C. § 702; 28 U.S.C. § 1331; 28 U.S.C. § 1361; and 42 U.S.C. § 2232. Only 5 U.S.C. § 702 will be discussed in this opinion, however, as this Court is of the opinion that it has subject matter jurisdiction under that provision alone.

Title 5 U.S.C. § 702 is the section of the Administrative Procedure Act (hereinafter referred to as the "APA") which sets forth a right to judicial review of administrative actions. That section provides:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

It is well settled within this circuit that section 702 does not extend the jurisdiction of this Court to cases not otherwise within its competence. Thus, in South Suburban Safeway Lines, Inc. v. City of Chicago, 416 F.2d 535, 537 (7th Cir. 1969), the Court stated:

"Although one can read § 702 as conferring standing on anyone who is 'adversely affected . . . by agency action', the prevailing judicial interpretation has been that § 702 does not create standing which would not exist apart from § 702 by virtue of general principles or other statutes. . . . This circuit has . . . followed the prevailing view. [Footnotes omitted]."

Accordingly, it is clear that in order for this Court to have subject matter jurisdiction in the instant suit, Plaintiff

must allege some agency action within the meaning of a "relevant statute" other than the APA.[2]

Plaintiff, aware of the APA's jurisdictional requirements in this circuit, asserts that the Atomic Energy Act of 1954, 42 U.S.C. §§ 2011–2296, is a "relevant statute" within the meaning of 5 U.S.C. § 702. Specifically, Plaintiff refers to section 181 of the Atomic Energy Act, 42 U.S.C. § 2231, which provides that all provisions of the APA are applicable to "all agency action taken under this chapter". Plaintiff contends that the AEC's exercise of its power to waive the Government's right to an exclusive patent license under section 152 of the Atomic Energy Act, 42 U.S.C. § 2182, is such "agency action".

Defendants, while admitting that some provisions of the Atomic Energy Act might be "relevant statute[s]" within the meaning of section 702, contend nevertheless that section 152 of that Act, alone, cannot be such a "relevant statute" for the two following reasons: (1) It is specifically exempted from the APA's provisions by 5 U.S.C. § 553(a) (2) since it involves a "matter relating to . . . public property . . . or contracts"; and (2) the hearing procedures outlined in the APA are not applicable to agency action under it since it does not require a hearing by its own terms.[3]

■ This Court is of the opinion that these contentions are without merit. First of all, the exemption relating to agency action involving public property or contracts set forth in 5 U.S.C. § 553(a)(2) is limited on its face to the rule-making procedures set forth in section 553 of the APA; nowhere does Plaintiff allege that the agency action complained of in the instant suit involved administrative rule-making.

■ Secondly, for reasons set forth in this opinion, this Court holds that due process requires that the AEC hold a hearing prior to a decision on whether to waive the Government's right to an exclusive license under section 152. While it is true that there is no constitutional right to a hearing when an administrative agency exercises its rule-making power, Superior Oil Co. v. Federal Power Com'n, 322 F.2d 601, 609 (9th Cir. 1963), cert. denied, 377 U.S. 922, 84 S.Ct. 1219, 12 L.Ed.2d 215, reh. denied, 377 U.S. 960, 84 S.Ct. 1625, 12 L.Ed.2d 504 · (1964), the complained of action in the instant suit did not involve rule-making. Instead, the AEC's decision to waive a license agreement must rest on considerations peculiar to each individual case.[4] Thus, since the AEC's action in deciding whether to waive its rights to a patent is more in the nature of an adjudication than of rule-making, it is obvious that such a decision should be reached only after a hearing. Hannah v. Larch, 363 U.S. 420, 442, 80 S. Ct. 1502, 4 L.Ed.2d 1307 (1960). The hearing need not conform to the standards of judicial formality but it must meet the requirements of elemental due process, Ideal Farms, Inc. v. Benson, 181 F.Supp. 62, 69 (D.N.J.1960), aff'd, 288. F.2d 608 (3rd Cir. 1961), cert. denied,

2. Plaintiff notes that decisions in other circuits and in the Eastern District of Wisconsin indicate that the Administrative Procedure Act requires no independent jurisdictional statute. Specifically, this Court is referred to Citizens Comm. for Hudson Valley v. Volpe, 302 F.Supp. 1083, 1091 (S.D.N.Y.1969), aff'd, 425 F.2d 97 (2nd Cir. 1970), cert. denied, 400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256 (1971); and Northwest Residents Assoc. v. HUD, 325 F.Supp. 65, 67 (E.D. Wis.1971). Whatever may be the wisdom of this newly developed interpretation, however, this Court feels compelled to follow the clear holdings of the Seventh Circuit Court of Appeals as set forth above.

3. Defendants contend that where Congress intended a hearing to be held, it could state so quite clearly. For example, see section 153 of the Atomic Energy Act, 42 U.S.C. § 2183.

4. Defendants admit in their brief that under section 152, "agency discretion [is] to be exercised on a case-by-case basis." Defendants' Memorandum in Support at 28.

372 U.S. 965, 83 S.Ct. 1087, 10 L.Ed.2d 128 (1963).

Further, the procedural defects alleged by Plaintiff go far beyond a simple failure to follow the APA's hearing procedures.[5]

■ Finally, the defendants contend that action under section 152 is not "agency action" within the meaning of the APA. Agency action, as defined by 5 U.S.C. § 551(13) is, *inter alia,*:

". . . the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."

5 U.S.C. § 551 defines "license" as follows:

". . . the whole or a part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission."

It is clear that the AEC's power under section 152 is basically the power to exempt certain patents from restrictive licensing. Thus, the agency has the power to grant a "statutory exemption" to a patent within the definition of the APA. Accordingly, the AEC's activities under section 152 may properly be defined as "agency action".

Accordingly, this Court holds it has subject matter jurisdiction under 5 U.S.C. § 702 to hear the instant suit.

## II. DOES THE PLAINTIFF HAVE STANDING TO BRING THE INSTANT SUIT?

■ In Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), the Supreme Court set forth the two modern prerequisites for "standing to sue": (1) There must be injury in fact to the Plaintiff, economic or oth-

erwise; and (2) The interest sought to be protected by the Plaintiff must arguably be within the zone of interests to be protected or regulated by the statute involved. If Plaintiff meets both of these requirements, it is an "aggrieved" person under 5 U.S.C. § 702 and entitled to bring the instant suit.

This Court has no problem finding injury in fact to the instant Plaintiff. The basic purpose behind this requirement, as the Supreme Court has noted, is to make certain

"the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." 397 U.S. at 151–152, 90 S.Ct. at 829.

The Plaintiff in the instant suit is currently under a preliminary injunction preventing it from marketing a device in the United States.[6] The motion for the preliminary injunction, like the instant motion, was bitterly fought by able counsel on both sides and the issues involved were joined in an adversary context. This Court is satisfied, therefore, that all parties at interest in the instant suit have substantial interests at stake in the outcome of this litigation. Accordingly, the first requirement of the standing criteria is met.

The second requirement of the standing criteria is that the interest sought to be protected by the Plaintiff must arguably be within the zone of interests sought to be protected or regulated by the statute involved. Plaintiff alleges that it has standing in the instant suit both as a taxpayer and as a competitor of Nuclear-Chicago, the assignee of Anger's patent. This Court is of the opinion that the Plaintiff does not have standing as a taxpayer alone, Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L. Ed.2d 947 (1968). The relationship be-

---

5. Plaintiff alleges the following requirements of the APA were not met by the AEC: Proper delegation of authority, administrative inquiry and investigation, notice and publication of standards for agency action, administrative findings and determinations setting forth the reasons

therefor, consistency of determinations with policy requirements of statute, and evidentiary support for determination.

6. Nuclear-Chicago Corp. v. Nuclear Data, Inc., Civil Action No. 71 C 2088 (N.D. Ill. March 22, 1972).

tween the tax paid by the Plaintiff and the AEC's complained of activity is so remote that a true case or controversy would be lacking. However, this Court is of the opinion that Plaintiff has standing as a competitor and manufacturer of nuclear devices.

In Association of Data Processing Service, Inc. v. Camp, *supra,* the Supreme Court stated:

> "Where statutes are concerned, the trend is toward enlargement of the class of people who may protest administrative action. The whole drive for enlarging the category of aggrieved 'persons' is symptomatic of that trend. In a closely analogous case we held that an existing entrepreneur had standing to challenge the legality of the entrance of a newcomer into the business, because the established business was allegedly protected by a valid city ordinance that protected it from unlawful competition. Chicago v. Atchison, T. & S. F. R. Co., 357 U.S. 77, 83–84 [78 S.Ct. 1063, 2 L.Ed.2d 1174]." 397 U.S. at 154–155, 90 S.Ct. at 830.

Later in the same case, the Supreme Court stated:

> "The Acts [the Bank Service Corporation Act and the National Bank Act] do not in terms protect a specified group. But their general policy is apparent; and those whose interests are directly affected by a broad or narrow interpretation of the Acts are easily identifiable. It is clear that petitioners, as competitors of national banks which are engaging in data processing services, are within that class of 'aggrieved' persons who, under § 702, are entitled to judicial review of 'agency action.' " 397 U.S. at 157, 90 S.Ct. at 832.

To determine what "zone of interests" are involved in the Atomic Energy Act, this Court must look to the policy set forth in that statute. That policy, stripped of its verbiage, is simply to make certain that this country would continue to lead all other countries in the research, development and application of atomic energy.[7] As applied to this particular case, the policy would be to make certain that the patented device would be rapidly developed, improved upon and placed at the disposal of the public. Because Plaintiff alleges that it could put an improved, lower-priced device at the public's disposal but for the monopoly granted Anger by the AEC, this Court is of the opinion that the statute's "zone of interests" must be interpreted as including Plaintiff's interest in marketing its nuclear device.

Accordingly, this Court holds that Plaintiff has standing to bring the instant suit.

## III. IS THE COMPLAINED OF AGENCY ACTION REVIEWABLE?

■ As a separate ground for dismissal, the Defendants contend that the AEC's waiver of rights in the 057 patent, purportedly done pursuant to section 152 of the Atomic Energy Act, is exempt from review by this Court since it is "agency action . . . committed to agency discretion by law" and thus unreviewable under 5 U.S.C. § 701(a) (2).

In Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the Supreme Court referred to the agency discretion exception as a "very narrow exception" and held it was only

> "applicable in those rare instances where 'statutes are drawn in such

---

7. Title 42 U.S.C. § 2011 provides:
". . . It is therefore declared to be the policy of the United States that—
 (a) the development, use, and control of atomic energy shall be directed so as to make the maximum contribution to the general welfare, subject at all times to the paramount objective of making

the maximum contribution to the common defense and security; and
 (b) the development, use, and control of atomic energy shall be directed so as to promote world peace, improve the general welfare, increase the standard of living, and strengthen free competition in private enterprise."

broad terms that in a given case there is no law to apply.'" *Id.* at 410, 91 S. Ct. at 821.

This Court is of the opinion that there is law to apply to a waiver determination by the AEC under section 152 and accordingly holds that the exception set forth in 5 U.S.C. § 701(a)(2) is inapplicable to the instant suit.

Section 152 of the Atomic Energy Act, 42 U.S.C. § 2182, provides:

"Any invention or discovery, useful in the production or utilization of special nuclear material or atomic energy, made or conceived in the course of or under any contract . . . entered into with or for the benefit of the Commission . . . *shall* be vested in, and be the property of, the Commission, except that the Commission may waive its claim to any such invention or discovery under such circumstances as the Commission may deem appropriate, *consistent with the policy of this section.* [Emphasis supplied]."

■■■■ In the first instance, legal standards are present in section 152 since the section itself speaks in mandatory language when it states the invention "shall" be vested in and be property of the Commission. In Crowther v. Seaborg, 312 F.Supp. 1205 (D.Colo.1970), the Court, in determining whether the AEC's action under a different section of the Atomic Energy Act was reviewable, stated:

"Defendants urge . . . that the phrase 'as the Commission may determine' places the nature of the arrangements within the agency discretion. The Court agrees with this construction of the statutory language. We note, however, that provision for health and safety is mandatory, since the language is 'shall contain'. Thus, the statute requires provision for health and safety, but the exact nature of the arrangements is lodged in the discretion of the AEC." *Id.* at 1220.

In the instant case, the effect of the mandatory language is to create a statutory presumption in favor of the Government's retaining ownership of patented inventions or discoveries.

Secondly, in 1961, Congress, by outlining the AEC's discretion in the exercise of its waiver power, further evidenced its intention to provide guidelines for that agency. Prior to 1961, the phrase "consistent with the policy of this section" was not in section 152; the exact reason for its inclusion can best be seen by referring to the Joint Committee report on S. 2391, which was ultimately enacted as Public Law 87–206, 75 Stat. 475:

"In the course of its study of the miscellaneous amendments to section 152 proposed by the AEC, the committee's attention was drawn to that part of section 152 which authorizes the Commission to waive its claim to patent rights. *In the belief that a standard governing the exercise of the Commission's authority in this respect was required, the committee developed the following language,* which is agreeable to the Commission for inclusion in the bill:

[The language here cited is that now in 42 U.S.C. § 2182 cited hereinabove].

It is the committee's belief that the additional language set out above will make it clear that *any waiver will have to be consistent with the general policy expressed in section 152* namely, that the Commission will normally take title to resulting atomic energy patents when it is supporting the research and development out of which the patent arise. [Emphasis supplied]."

Thus, it is clear that Congress sought to establish standards under which the AEC would have to operate when determining whether to exercise its waiver power. This Court is of the opinion, therefore, that the combination of mandatory language in section 152 along with the standard outlined in that sec-

tion for the exercise of waiver constitutes "law" or legal standards in that section so that the agency discretion exception set forth in 5 U.S.C. § 701(a) (2) above is inapplicable to the present litigation.

## IV. IS THE INSTANT SUIT TIMELY?

■ Defendants, contending that the instant suit was not timely brought, state:

"Plaintiff, Nuclear Data, Inc., was incorporated in Delaware in November 1967, as successor by merger of an Illinois company of the same name, incorporated in January 1959. Defendant Anger has been the record owner of the Anger Invention at least since March 28, 1962. Plaintiff, apparently spurred on by the earlier infringement action filed in this Court on or about August 26, 1971, initiated this action in this Court on October 29, 1971."

From these facts, Defendants conclude that 10 years is far too long a period to wait to challenge an agency determination.

This Court disagrees. From the Court's discussion on standing hereinabove, it is obvious that Plaintiff did not have standing to sue and could not have brought the instant suit until it became an actual competitor of Nuclear-Chicago, the assignee of the 057 patent. Plaintiff did not become a competitor until its acquisition of Selektronik-K, Lange A/S, the Danish joint stock company which manufactures the device which allegedly infringes the 057 patent and which Plaintiff is enjoined from selling in the United States. That acquisition did not take place until December, 1970, only 10 months prior to the commencement of this action. The Court is of the opinion that a 10 month period does not constitute prejudicial delay in the instant suit and accordingly holds that the suit was timely brought.

## V. IS THE INSTANT ACTION AN UNCONSENTED SUIT AGAINST THE GOVERNMENT?

■ Defendants contend that unless the Plaintiff can point to a specific statute waiving sovereign immunity by the United States, Anderson, as Assistant General Counsel for Patents of the AEC, and the AEC are immune from suit. Plaintiff argues that section 10 of the APA, 5 U.S.C. § 702, gives such a waiver.

In Powelton Civic Home Owners Ass'n v. HUD, 284 F.Supp. 809, 834 (E.D. Penn.1968), the Court stated:

"First, we have concluded that judicial review of the Secretary's alleged refusal to afford the plaintiffs adequate procedural relief is authorized by Section 10 of the Administrative Procedure Act, 5 U.S.C. § 702. *Where applicable, Section 10 implies a comprehensive waiver of sovereign immunity in all actions otherwise sustainable against federal officers or agencies.* [Emphasis supplied]."

*In accord*, Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 385, 424 F.2d 859, 873 (1970); Estrada v. Ahrens, 296 F.2d 690, 698 (5th Cir. 1961). In this Court's discussion of subject matter jurisdiction, it was held that the complained of agency activity in the instant suit constituted agency action as that term is defined by the APA. Accordingly, this Court holds that the instant action is not an unconsented suit against the Government.

As a final issue, Defendants contend that to grant the relief requested by Plaintiff would be to issue an injunction against the Government. While Defendants' contention may have merit, this Court does not feel compelled to rule on this issue at the present time; however, at such time as the record more completely discloses what the most suitable remedy would be, this Court would welcome a motion by any party to reconsider this legal issue.

Accordingly, it is hereby ordered that Defendants' motion to dismiss is denied.