700 P.2d 1005

**UNITED NUCLEAR CORPORATION,
Plaintiff-Appellant,**

v.

**Denise FORT and Environmental
Improvement Division,
Defendants-Appellees.**

No. 7878.

Court of Appeals of New Mexico.

May 9, 1985.

G. Stanley Crout, C. Mott Woolley, Michael S. Yesley, Paula A. Johnson, Stephenson, Carpenter, Crout & Olmsted, Santa Fe, for plaintiff-appellant.

Louis W. Rose, Sp. Asst. Atty. Gen., Santa Fe, for defendants-appellees.

## OPINION

DONNELLY, Chief Judge.

United Nuclear Corporation (UNC) appeals from an order of the district court dismissing its complaint on the basis of improper venue in McKinley County. UNC filed suit against the Director of the Environmental Improvement Division (Director)[1] and the Environmental Improvement Division (Division), seeking appellate review of administrative proceedings by the Director and the Division, damages for the alleged taking of property, declaratory and injunctive relief, and mandamus. Three issues are raised on appeal: (1) whether the district court had appellate jurisdiction to review actions of the Environmental Improvement Board under the Radiation Protection Act; (2) whether venue for claims against state officers properly lies in McKinley County; and (3) what venue statute controls when inconsistent venue statutes apply to multiple claims. Reversed in part and affirmed in part.

1. Denise Fort has been substituted as a defendant for Steven Asher.

## FACTS

UNC operates a uranium mill at its Churchrock mine in McKinley County. In 1977, the Division issued a license to UNC for operation of its mill pursuant to the Radiation Protection Act. NMSA 1978, § 74–3–1 et seq. (Repl.Pamp.1983).

In 1983, UNC suspended its mining and milling operations at Churchrock and applied to the Division for an exemption from the radiation regulations issued by the Division that required UNC to stabilize and provide liquid treatment for uranium tailings and tailings pond. The Division, without holding a hearing or receiving evidence, denied UNC's request for an exemption, noting that "[t]he Division [did] not anticipate the resumption [by UNC] * * * of tailings disposal at the present site."

On February 1, 1983, the Division held a hearing, pursuant to its radiation regulations, to determine whether UNC was exceeding the limits for release of thorium. UNC presented evidence at the hearing that it would not allow any wells to be drilled in certain areas adjoining its tailings disposal area or tailings pond which could endanger individuals due to exposure from radiation and radioactive materials. The Division presented evidence that levels of thorium, in excess of that permitted by law, had been found in underground water supplies in the vicinity of UNC's mill and tailings pond. The Division sought a cease and desist order against UNC. UNC presented evidence challenging whether one of the areas where thorium had been found was an unrestricted area. UNC argued that even if in the past its release of thorium, due to its mining operation, exceeded permissible levels a cease and desist order was not appropriate. UNC explained that it had undertaken a program to precipitate the thorium out of its tailings pond and that no significant amounts of thorium were currently being released in the area.

On May 23, 1983, the Division issued a cease and desist order which also directed UNC to take certain corrective measures, including the construction and modification of its extraction wells, investigation of well completion information and development procedures, submission of proposals for disposal of seepage captured from extraction wells, ground-water testing, and presentation of an interpretive report to the Division explaining UNC's compliance with the Radiation Protection Regulations.

Following the issuance of the cease and desist order by the Division, UNC filed suit in the McKinley County District Court. The complaint sought relief under three different counts. Count I alleged that the Division's denial of its application for an exemption was unlawful, and sought review of the Division's administrative denial of the exemption and its subsequent issuance of a cease and desist order. Count II alleged that the Division's cease and desist order was unlawful and exceeded the Division's authority. Count III alleged that the action taken by the Division deprived UNC of its property without due process of law. UNC requested that the court prohibit enforcement of the cease and desist order.

The Division moved to dismiss the entire action filed by UNC claiming, *inter alia,* improper venue. On April 13, 1984, the district court granted Division's motion to dismiss "without prejudice." The court did not rule upon the merits of the claims raised by UNC, but did adopt findings of fact and conclusions of law. The court's findings and conclusions of law determined that the May 23, 1983 cease and desist order and the May 26, 1983 denial of UNC's request for an exemption, were administrative decisions of the Division but were not "licensing actions" within the meaning of NMSA 1978, Section 74–3–9(E) (Repl.Pamp.1983). Based upon its findings of fact, the lower court concluded that it had no jurisdiction to review either UNC's claim of error regarding the Division's cease and desist order or the Division's denial of UNC's request for an exemption. The court further concluded that the court of appeals had "exclusive jurisdiction under Sec. 34–5–8, NMSA, 1978, as amended * * to review on appeal decisions of administrative agencies of the State." The court also dismissed UNC's remaining claims on the

basis that the proper venue for claims against state officers lies in Santa Fe County, not McKinley County.

## I. APPELLATE JURISDICTION OF THE DISTRICT COURTS

UNC argues that the dismissal of its claims for review of the Division's denial of its exemption request and its cease and desist order was improper. UNC claims that the district court has original jurisdiction over these actions pursuant to Section 74–3–9.

Section 74–3–9, contained in the Radiation Protection Act, provides in applicable part:

A. It is unlawful for any person to possess, use, store, dispose of, manufacture, process, repair or alter any radioactive material unless he holds:

(1) a license issued by the nuclear regulatory commission, and notification by the licensee to the agency of license identification;

\* \* \* \* \* \*

(3) a license issued by the agency.

\* \* \* \* \* \*

C. The board may, by regulation, exempt from the requirements of licensure specific quantities of any radioactive material determined by the board not to constitute a health or environmental hazard.

\* \* \* \* \* \*

E. *Any person who is or may be affected by licensing action of the agency may appeal for further relief to the district court in which the subject facilities or activities are located.* All such appeals shall be upon the agency's administrative records and shall be taken within thirty days from the date the decision is final. [Emphasis added.]

 Under the Radiation Protection Act, a license is required in order to carry on the activities enumerated in Section 74–3–9. The words "licensing action," as used in the Radiation Protection Act, refer to the process of issuing a license under the Act, as well as the denial, suspension, exemption, modification, or revocation of a li-

cense. Section 74–3–9. *Cf. Nuclear Data, Inc. v. Atomic Energy Commission,* 344 F.Supp. 719 (N.D.Ill.1972) ("agency action" regarding licensing includes grant or denial of exemption). A license bestows authority to carry on an activity which the state may deny. *Western Electric Co. v. Pacent Reproducer Corp.,* 42 F.2d 116 (2d Cir.1930).

 Since the purpose of licensing under the Radiation Protection Act is to supervise the use and disposal of radioactive material in New Mexico, denial of an exemption under the Act, or Division orders directing the means used for use and disposal of radioactive material, is "licensing action" within the meaning of Section 74–3–9. The trial court erroneously concluded that the Division's actions did not comprise "licensing action" within the meaning of Section 74–3–9. The district court had appellate jurisdiction to review the Division's denial of UNC's exemption request.

 The court of appeals is a court of limited jurisdiction and exercises appellate jurisdiction as provided by law. *State ex rel. Department of Human Services v. Manfre,* 102 N.M. 241, 693 P.2d 1273 (Ct. App.1984). Specific statutes govern general statutes. *Id.* Thus, the statute providing for district court review of licensing actions of the Division is controlling because the right of appeal in Section 74–3–9(E) designates the court to conduct the appeal. *See State ex rel. Pilot Development Northwest, Inc. v. New Mexico Health Planning & Development Bureau,* 102 N.M. 791, 701 P.2d 390, (Ct.App.1985).

## II. VENUE OF CLAIMS AGAINST STATE OFFICERS

NMSA 1978, Section 38–3–1(G) (Cum. Supp.1984) is the general venue statute governing the filing of claims against state officers. Subsection G provides that "suits against any state officers as such shall be brought in the court of the county wherein their offices are located, at the capital [Santa Fe] *and not elsewhere*" (emphasis added).

UNC argues that, under Section 38–3–1(G), venue of their claims against state

officers lies in McKinley County due to UNC's allegations that specific state officers acted illegally and in an unauthorized manner. UNC argues that venue is only proper in Santa Fe County, pursuant to Section 38–3–1(G), if the complaint alleged that the wrongful acts were committed within the state officers' lawful authority.

UNC's position is without merit. UNC bases its argument on a rule established in *Allen v. McClellan,* 77 N.M. 801, 427 P.2d 677 (1967), which has been expressly overruled in part by *New Mexico Livestock Board v. Dose,* 94 N.M. 68, 607 P.2d 606 (1980).

*Jones v. New Mexico State Highway Department,* 92 N.M. 671, 593 P.2d 1074 (1979) explained venue within the context of Section 38–3–1 and held that the legislature intended that actions against state officers be brought only in Santa Fe County. However, the court stated that this venue statute should not be equated with jurisdiction; unlike jurisdiction, venue can be waived if not timely or properly raised before the trial court. *Id.*

■ In determining venue, the court must look to the complaint and the character of the judgment which may be rendered. *Davey v. Davey,* 77 N.M. 303, 422 P.2d 38 (1967). UNC's complaint characterized the three counts as a petition "for review of administrative action by appeal, declaratory and injunctive relief, or mandamus." The Environmental Improvement Division and its Director were named as defendants. Venue, according to Section 38–3–1(G) therefore, applies to the claims made against the Director. Although the complaint sought damages, no specific allegation of tortious conduct within the Tort Claims Act was alleged; hence, the venue provisions of the Tort Claims Act are not applicable to the present case.[2]

■ The trial court correctly determined that Section 38–3–1(G) controlled as to ven-

ue for the portions of the complaint containing claims against state officials. UNC's attempt to take its claims outside of the purview of Section 38–3–1(G) by alleging that the state officials acted illegally and therefore outside of their official capacity, is based on *Allen.* The court in *Allen* held that Section 38–3–1(G) did not apply to the acts of the defendants as individuals. The complaint in this case makes no distinction between the Division and the Director. The complaint and the character of the judgment that may be rendered, *see Davey,* does not involve the Director as an individual, but the Director, qua Director. Section 38–3–1(G) governs the venue of the suit against the Director.

### III. VENUE FOR MULTIPLE CLAIMS WITH INCONSISTENT VENUE STATUTES

■ Under our rules of civil procedure, a party may file pleadings alleging multiple claims or stating inconsistent causes of action. NMSA 1978, Civ.P.R. 8(e) (Repl. Pamp.1980). The issue of what statute is controlling as to venue when multiple or inconsistent claims are alleged, each governed by separate venue statutes, is a matter of first impression in New Mexico. *Cf. Lopez v. Clothier,* 24 SBB 193 (Ct.App. 1985) *(cert. granted* February 20, 1985).

UNC brought claims against the Environmental Improvement Division and Director regarding their actions affecting UNC's use and disposal of radioactive material. Two venue statutes are at issue:

1) Section 38–3–1(G) requiring venue in Santa Fe County for claims against state officials and,

2) Section 74–3–9(E) allows claims by persons affected by "licensing actions" to be brought in the county where the facilities or activities are located (McKinley County in the present case).

**2.** NMSA 1978, Section 41–4–18(B) (Repl.Pamp. 1982) of the Tort Claims Act provides that "[v]enue for any claim against the state or its public employees, pursuant to the Tort Claims Act, shall be the district court for the county in which a plaintiff resides, or in which the cause of action arose, or in Santa Fe county. Venue for all other claims pursuant to the Tort Claims Act, shall be in the county in which the principal offices of the governing body of the local public body are located."

As a general rule where separate causes of action are plead and each are subject to different venue provisions, the court in which the principal action is brought, being the proper court to hear that action, may determine ancillary or incidental proceedings, notwithstanding that venue as to certain other alleged actions would otherwise lie in another county. If venue is proper in the principal claim, it continues to be proper with respect to other pendant claims. *E.g. Hughes v. Joe G. Maloof & Co.*, 84 N.M. 516, 505 P.2d 859 (Ct.App.1973) (venue was proper where original suit was filed; cross-claimant not entitled to change of venue when original suit dismissed).

The law disfavors splitting causes of action or conducting separate trials between the same parties in different localities. *See Carlton v. Superior Court for Butte County*, 240 Cal.App.2d 586, 49 Cal.Rptr. 759 (1966); *Alamida v. Wilson*, 53 Haw. 398, 495 P.2d 585 (1972). This rule is grounded upon public policy designed to avoid a multiplicity of suits. *Wester v. Smith*, 213 S.W.2d 550 (Tex.Civ. App.1948); *Dickson v. Klett*, 211 S.W.2d 381 (Tex.Civ.App.1948). *E.g., Lougee v. New Mexico Bureau of Revenue Commissioner*, 42 N.M. 115, 76 P.2d 6 (1937). Where a pleader has properly joined two or more causes of action, suit may be brought in the county in which a suit on either of the causes may be filed. *Ellsworth v. Layton*, 97 Ariz. 115, 397 P.2d 450 (1964) (en banc); *Twin Lakes Reservoir & Canal Co. v. Bond*, 156 Colo. 433, 399 P.2d 793 (1965) (en banc).

A plaintiff may not, however, by combining different causes of action having different venues, manipulate venue where a statute specifically mandates that a particular action must be heard in a particular county. *See Keithly v. Lacey*, 77 Cal.App.2d 339, 175 P.2d 235 (1946); *Campbell v. Deddens*, 21 Ariz.App. 295, 518 P.2d 1012 (1974). In order to remove a case from the application of a general venue statute there must be a cause of action which falls within an exception to the statute or is governed by a separate mandatory venue statute. A permissive venue statute must yield to a mandatory venue provision. *Transit Casualty Co. v. Bell*, 491 P.2d 771 (Okl.1971); *Massengill v. Superior Court in and for Maricopa County*, 3 Ariz.App. 588, 416 P.2d 1009 (1966).

We interpret Section 38–3–1(G) to constitute a mandatory venue statute and the language "suits against any state officers as such *shall be brought* in the court of the county wherein their offices are located, at the capital and not elsewhere" to be controlling as to the proper venue for plaintiff's claims against state officials. (Emphasis added.) Section 38–3–1(G) has previously been held to be controlling as to every action brought against state officers. *Jones v. New Mexico State Highway Department*. Joinder of the several claims in UNC's complaint, in the interest of judicial economy, required suit to be brought in Santa Fe County due to the venue requirement of Section 38–3–1(G) inasmuch as venue under Section 74–3–9(E) is not written in terms of a specific mandate.

As discussed previously, the denial of the request for exemption by UNC was "licensing action" subject to review by the district court under the Radiation Protection Act. The trial court's order determining the inappropriateness of its appellate jurisdiction over the denial of the requested exemption issue is reversed. However, because UNC joined its claim seeking administrative review with other claims against a state officer, the trial court properly determined that the controlling venue provision in the present case required the suit to be brought in Santa Fe County pursuant to Section 38–3–1(G). The Santa Fe District Court may properly hear all of UNC's claims. The order of the trial court determining that venue does not exist in McKinley County is affirmed.

IT IS SO ORDERED.

WOOD and ALARID, JJ., concur.