701 P.2d 390

**STATE of New Mexico ex rel. PILOT DEVELOPMENT NORTHWEST, INC., Petitioner-Appellee,**

v.

**STATE of New Mexico HEALTH PLANNING & DEVELOPMENT BUREAU, and Kirby D. Monroe, Chief of State Health Planning & Development Bureau, Respondent-Appellee,**

and

**Americare Southwest, Inc., Intervenor-Appellant.**

**AMERICARE SOUTHWEST, INC., Appellant,**

v.

**STATE HEALTH PLANNING AND DEVELOPMENT BUREAU and Pilot Development Northwest, Inc., Appellees.**

Nos. 7914, 7933.

Court of Appeals of New Mexico.

May 9, 1985.

Earl R. Norris, Oldaker & Oldaker, Albuquerque, for appellant, Americare Southwest, Inc.

Diane Fisher, Edward Ricco, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for appellee Pilot Development Northwest, Inc.

Paul G. Bardacke, Atty. Gen., William G. Walker, Gen. Counsel of Health & Environment Dept., Jerry Dickinson, Sp. Asst. Atty. Gen., Santa Fe, for appellee State Health Planning & Development Bureau.

## OPINION

WOOD, Judge.

Section 1122 of the Social Security Act, 42 U.S.C.S. Section 1320a–1 (Law.Coop.1973 & Supp.1984), provides a limitation on federal reimbursement of capital expenditures for health care facilities. The purpose of the statute is to assure that funding for specified programs under the Social Security Act is "not used to support unnecessary capital expenditures made by or on behalf of health care facilities which are reimbursed" by the federal government. 42 U.S.C.S. § 1320a–1(a).

These consolidated appeals involve the competing applications of Americare Southwest, Inc. (Americare) and Pilot Development Northwest, Inc. (Pilot) for Section 1122 approval of proposed health care facilities. Pilot's application was approved; Americare's was denied. Americare appealed both the approval of Pilot's application and the denial of its application. The appeal was to be heard by a hearing officer. Americare and the State Health Planning and Development Bureau (SHPDB) "settled" Americare's appeals, and the appeals were dismissed.

Pilot sought, and the district court granted, a peremptory writ of mandamus which was made permanent. Cause No. 7914 is Americare's appeal of the mandamus decision.

Americare then moved that the hearing officer vacate the orders dismissing its administrative appeals. The hearing officer refused to vacate the order dismissing Am-

ericare's appeal of SHPDB's approval of Pilot's application. Americare moved for reconsideration of the refusal to vacate. The motion to reconsider was denied. Cause No. 7933 is Americare's appeal from the denial of the motion to reconsider. The hearing officer has taken no action on that part of Americare's motion which sought vacation of the order dismissing its appeal from the denial of Americare's application.

We (a) state the background, (b) dispose of the appeal in No. 7933 on a jurisdictional ground, and (c) consider the propriety of the district court's mandamus decision.

## BACKGROUND

The limitation on federal reimbursement for capital expenditures for health care facilities is accomplished through a cooperative program of state and federal review. Under this program, a state agency meeting certain criteria makes recommendations to the Secretary of Health, Education and Welfare (Secretary) with respect to proposed capital expenditures. The state agency acts pursuant to an agreement between the state and federal governments. 42 U.S.C.S. § 1320a–1(b). 42 U.S.C.S. Section 1320a–1(b)(3) requires that a participating state provide for the administrative appeal of a party which received an adverse recommendation to its capital expenditure proposal. The Secretary can reduce payments to health care facilities which did not comply with the review program. 42 U.S.C.S. § 1320a–1(d).

New Mexico participates in the Section 1122 cooperative program on the basis of written agreements. The agreements provide that SHPDB is the agency charged with reviewing Section 1122 applications.

SHPDB received the applications of Americare and Pilot for Section 1122 approval of health care facilities in Health Planning District I, which is not defined but appears to cover San Juan and McKinley Counties. Americare applied for approval of 84 intermediate care nursing home beds (ICF) and 36 skilled nursing home beds (SNF) to be located in Farmington, San Juan County. Pilot applied for approval of 90 ICF to be located in Bloomfield, San Juan County.

SHPDB referred the applications to the Health Systems Agency (HSA). The application of Pilot was reviewed by a Subarea Council (SAC) for District I. The SAC approved Pilot's application. The SAC did not review Americare's application.

A court order required SHPDB to "batch" Americare's application with Pilot's application. The governing body of HSA reviewed the two applications. The governing body recommended approval of Pilot's application and recommended disapproval of Americare's application. After receiving the HSA recommendation, SHPDB considered the criteria for Section 1122 applications and, on the basis of a comparative review of the applications, accepted the HSA recommendations. SHPDB's letter decision was June 6, 1983.

On June 30, 1983, Americare wrote to SHPDB demanding a "fair hearing of the SHPDB findings and recommendations" which denied Americare's application and approved Pilot's application. No one contends the letter was insufficient to invoke an appeal before a hearing officer. *See* 42 U.S.C.S. § 1320a–1(b)(3) and 42 C.F.R. § 100.106(c) (1984). A hearing officer was appointed.

In August 1983 (the administrative record does not consistently show filing dates), Pilot moved to dismiss Americare's administrative appeal insofar as the appeal involved SHPDB's approval of Pilot's application. The motion alleged that Section 1122 did not afford Americare the right to appeal the decision on Pilot's application. The hearing officer set the motion to dismiss for hearing on October 13, 1983.

The motion to dismiss was not heard on October 13, 1983. Instead, two orders of dismissal were entered.

The hearing officer entered an order dismissing Americare's appeal of SHPDB's denial of Americare's application. The order recites that Americare and SHPDB "have settled and compromised their dispute * * *." Two exhibits were incorporated as a part of the order of dismissal. These exhibits reveal "discussions" be-

tween SHPDB and Americare, Americare's "modifications in Americare's original proposal," a "new total capital expenditure" of $3,500,000 of which $3,000,000 would be allocated to 72 ICF and 24 SNF. Thus, settlement was reached by amending Americare's original proposal by decreasing ICF beds by 12 and SNF beds by 12. "The above figures do not work a change in the daily cost and charges * * *." Pilot was not a participant in the "discussions" between Americare and SHPDB and was not a party to the settlement.

The hearing officer entered a separate order dismissing Americare's appeal of SHPDB's approval of Pilot's application. This order recites that the matter before the hearing officer was Pilot's motion to dismiss Americare's appeal of SHPDB's approval of Pilot's application, "[t]hat Americare no longer opposes Pilot's motion" and consents to the dismissal of its appeal against Pilot. The order recites "that the disposition of Americare's appeal as against Pilot in no way affects Pilot's right to appear or speak as an interested person with respect to Americare's application for 1122 approval."

On November 1, 1983, Pilot moved for reconsideration of the hearing officer's order of October 13, 1983, approving the "settlement" between SHPDB and Americare. The motion alleges "that the settlement and its approval are beyond the authority of SHPDB and the hearing officer and that the procedural irregularities involved in the settlement require that it be disapproved." Pilot's memorandum supporting its motion identified three items allegedly disregarded by SHPDB in settling with Americare. These items are pertinent to the mandamus appeal and are: (1) disregard of established notification procedures; (2) the right of an applicant to have its application "batched" with a competing application; and (3) the procedure for local review of applications. The motion to reconsider was denied by the hearing officer by an order entered on November 15, 1983.

The denial was apparently known by Pilot prior to November 15, 1983, because on November 14, 1983 it sought, and the district court issued, a peremptory writ of mandamus. Americare was permitted to intervene. The permanent writ, filed April 27, 1984, declared the settlement void, held that Americare's amendment of its application during the appeal process was invalid and that the amendment "must be submitted as a new application subject to the entire 1122 review process."

The issuance of a permanent writ was apparently anticipated by Americare because, in January 1984, it moved to vacate the orders of October 13, 1983, which dismissed its two administrative appeals. Notice of hearing on this motion was given for March 7, 1984. The hearing officer's order was entered either April 12, 17 or 18, 1984. We cannot read the date with any certainty. This order denied the motion to vacate the dismissal of Americare's appeal of SHPDB's approval of Pilot's application "because the Order * * * dismissing such appeal was not dependent upon nor entered in consideration of * * * the settlement" between Americare and SHPDB.

On April 24, 1984, Americare moved for reconsideration of the order denying the motion to vacate. An order denying the motion to reconsider was entered May 7, 1984. A "NOTICE OF JUDICIAL APPEAL" appears in the administrative record, but with no date of entry. The certification on the notice recites delivery of the notice to counsel on June 6, 1984. SHPDB did receive the notice on June 6, 1984. No independent notice of appeal was filed with this court. A copy of the notice of appeal appearing in the administrative record is included in a "skeleton transcript" filed with this court on July 5, 1984.

## JURISDICTION IN NO. 7933

Pilot moved to dismiss Americare's appeal in No. 7933 for lack of jurisdiction. The motion asserts that no right of appeal exists from an order of the hearing officer issued during a review of determinations of SHPDB. The motion was held in abeyance until the consolidated appeals were submitted on the merits. We now have con-

sidered this motion and hold that it should be granted.

Before stating our reasons, we outline, but do not decide, problems with the appeal. Identification of these problems emphasizes the wisdom of a policy of reluctance in expanding the scope of judicial review unless specifically authorized. *See Kelly v. St. Vincent Hospital,* 102 N.M. 201, 692 P.2d 1350 (Ct.App.1984). This case does not involve the quality or sufficiency of health care to be provided. Rather, it involves the competition of Americare and Pilot for access to federal money. Both applicants can build the facility they propose; they want an assurance of federal money before proceeding. Americare, the loser in the competition, asks this court to review the merits of administrative decisions and reach a result which excludes Pilot from federal reimbursement for Pilot's capital expenditures. The federal statute does not provide for federal court review of the merits. *See* 42 U.S.C.S. § 1320a–1(b). Americare advances no reason why New Mexico courts should do so. Compare our supreme court's order, not reported, in *State ex rel. National Medical Enterprises v. Scarborough,* Sup.Ct. No. 15,669 (Filed January 17, 1985).

If there was a right to appeal the merits of the hearing officer's decision, there are the following problems:

(a) Americare had the right to appeal SHPDB's decision to a hearing officer because its application was disapproved. 42 U.S.C.S. § 1320a–1(d)(1)(B)(ii)(II); 42 C.F.R. § 100.106(c). But, did Americare have the right to appeal SHPDB's decision approving the application of Pilot? *Compare Lifemark Corp. v. Guissinger,* 416 So.2d 1279 (La.1982) *with Ashbacker Radio Corp. v. Federal Communications Commission,* 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945).

(b) If Americare had an administrative appeal from the approval of Pilot's application, was Pilot a party to that appeal? If Pilot was a party to Americare's appeal from the approval of Pilot's application, was Pilot also a party to Americare's appeal of the denial of Americare's application? If Pilot was a party to Americare's appeal of the denial of Americare's application, could Americare and SHPDB "settle" that appeal without the participation of Pilot?

(c) The hearing officer denied Americare's motion to vacate the order dismissing Americare's appeal of the approval of Pilot's application. The hearing officer took no action on Americare's motion to vacate the order dismissing Americare's appeal of the denial of its application. If the two administrative appeals are mutually exclusive, see *Ashbacker,* and one aspect of the motion to vacate has not been ruled on, is there an appealable order in connection with the motion to vacate?

(d) Americare has not appealed from the denial of the motion to vacate. Rather, it has appealed from the denial of its motion to reconsider the denial of its motion to vacate the order dismissing Americare's appeal of the approval of Pilot's application. Is the denial of a motion to reconsider an appealable order?

■ (e) What time was allowed for appealing to this court? No rule or statute provides an answer. NMSA 1978, Civ.App. Rule 13 (Repl.Pamp.1984) does not state a time for taking an appeal. NMSA 1978, Civ.App. Rule 3(a) (Repl.Pamp.1984) provides thirty days for appeals in civil actions, which means court cases, not appeals from administrative actions. Where an appeal is authorized, but no time for taking the appeal is specified, the time allowed is a reasonable time. *Board of Education, Penasco Independent School District No. 4 v. Rodriguez,* 77 N.M. 309, 422 P.2d 351 (1966). A reasonable time would be the time provided by rule for appeals from the district court. *See Roberson v. Board of Education of City of Santa Fe,* 78 N.M. 297, 430 P.2d 868 (1967). Thus, if there was a right to appeal, and if denial of the motion to reconsider was an appealable order, Americare had thirty days to take an appeal "by filing notice of appeal with the appellate court * * *." Civ.App.R. 13. The motion to reconsider was denied May

7, 1984. No notice of appeal was filed with this court until July 5, 1984.

(f) If Americare's appeal is properly in this court, what is this court's standard for review? No statute provides a standard for this case. No case law addresses the standard for reviewing this type of case. *See Groendyke Transport, Inc. v. New Mexico State Corporation Commission,* 101 N.M. 470, 684 P.2d 1135 (1984).

The foregoing matters are worthy of consideration should a right to appeal be conferred.

■ We began the discussion of this issue by indicating that Americare had no right of appeal from the denial of the motion to reconsider. Americare recognizes that 42 U.S.C.S. Section 1320a–1 does not provide a right to appeal; it argues only that the statute does not withdraw a right to appeal. Similarly, 42 C.F.R. Section 100.106(c)(4) does not provide a right to appeal; the regulation refers to "where judicial review * * * is obtained * * *."

■ This court has no jurisdiction to consider appeals from administrative decisions absent a statute authorizing an appeal. *State ex rel. Department of Human Services v. Manfre,* 102 N.M. 241, 693 P.2d 1273 (Ct.App.1984); *Eastern Indemnity Co. of Maryland v. Heller,* 102 N.M. 144, 692 P.2d 530 (Ct.App.1984); *Kennecott Copper Corp. v. Environmental Improvement Board,* 84 N.M. 193, 500 P.2d 1316 (Ct.App.1972).

Americare recognizes that an appeal must be authorized because that right is a matter of substantive law. *See Heller.* It asserts a right of appeal was authorized by the amendment to NMSA 1978, Section 34–5–8 by N.M.Laws 1983, ch. 333. Section 34–5–8 pertains to the subject matter jurisdiction of the court of appeals. Prior to the 1983 amendment, Section 34–5–8(F) (Repl.Pamp.1981) authorized this court to review decisions of administrative agencies "where direct review by the court of appeals is provided by law[.]" After the 1983 amendment, Section 34–5–8(A)(6) (Cum. Supp.1984) authorized this court to review

"decisions of administrative agencies of the state[.]"

■ Americare contends that this court has never considered the effect of the 1983 amendment and that the effect of the amendment was to authorize appeals to this court from all administrative agency decisions. We disagree with both contentions.

Citing Section 34–5–8, as amended, *Manfre* states: "The statute defining our jurisdiction allows us to review, on appeal, decisions of administrative agencies of the state when express legislative authorization specifies a right of direct appeal." 693 P.2d at 1275.

The 1983 amendment to Section 34–5–8 increased the subject matter jurisdiction of the court of appeals. This is apparent when one compares this court's jurisdiction in civil actions before the amendment, Section 34–5–8(A) (Repl.Pamp.1981), and after the amendment, Section 34–5–8(A)(1) (Cum. Supp.1984). Prior to the 1983 amendment, Section 34–5–8 authorized this court to review administrative decisions as provided by law; Section 34–5–8 did not, in itself, confer subject matter jurisdiction. After the 1983 amendment, this court has subject matter jurisdiction to review decisions of administrative agencies.

Our subject matter jurisdiction is not the issue here. The issue is Americare's right to appeal. If there is a right to appeal, this court has jurisdiction over the subject matter. However, this court does not have jurisdiction over an appeal that is not authorized. There being no statute authorizing the appeal, the motion to dismiss is granted. *City of Truth of Consequences v. State Department of Alcoholic Beverage Control,* 84 N.M. 589, 506 P.2d 333 (1973); *Taggader v. Montoya,* 54 N.M. 18, 212 P.2d 1049 (1949); *State v. Arnold,* 51 N.M. 311, 183 P.2d 845 (1947).

**THE MANDAMUS DECISION**

■ None of the parties question this court's jurisdiction to review the district court's mandamus decision. In 1982 we raised, but did not decide, this jurisdictional

question. *State ex rel. New Mexico State Highway Department v. Silva,* 98 N.M. 549, 650 P.2d 833 (Ct.App.1982). In 1983 Section 34–5–8 was amended to confer appellate jurisdiction on the court of appeals in "any civil action not specifically reserved to the jurisdiction of the supreme court by the constitution or by law[.]" Section 34–5–8(A)(1). Mandamus is a civil action. *Perez v. Barber,* 7 N.M. 223, 34 P. 190 (1893). *See* NMSA 1978, § 44–2–11. Jurisdiction in mandamus appeals is not reserved to the supreme court by N.M. Const. art. VI, § 2, nor by NMSA 1978, Section 44–2–14. This court has subject matter jurisdiction in the mandamus appeal.

We summarily answer two of Americare's contentions directed to the permanent writ of mandamus. 1. Americare asserts mandamus was an improper remedy because Pilot had an adequate remedy by appeal. NMSA 1978, § 44–2–5; *Montoya v. Blackhurst,* 84 N.M. 91, 500 P.2d 176 (1972). Americare claims Pilot could have appealed the hearing officer's order approving the "settlement" between Americare and SHPDB. Americare fails to identify any statute authorizing an appeal. See our discussion in the preceding issue. 2. The trial court orally indicated what it would find and requested that Pilot draft findings for the court to sign. It stated that it would review Pilot's draft before signing to insure the draft reflected the court's views. Americare claims the trial court did not exercise its independent judgment in adopting findings and conclusions drafted by Pilot. The trial court's remarks are to the contrary. Regardless, the adoption, verbatim, of findings requested by counsel is not error if the findings are supported by the record. *In Re Hamilton,* 97 N.M. 111, 637 P.2d 542 (1981).

Americare's third contention, directed to the permanent writ, goes to the basis for a writ of mandamus. NMSA 1978, Section 44–2–4 provides that the writ may be issued "to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or sta-

tion * * *." Mandamus will compel the performance of ministerial acts or duties imposed by law upon a public officer to do a particular act. A ministerial act is an act which a public officer is required to perform by direction of the law upon a given state of facts being shown to exist. *State ex rel. Reynolds v. Board of County Commissioners, County of Guadalupe,* 71 N.M. 194, 376 P.2d 976 (1962).

The writ was directed to SHPDB and Monroe, its employee. It is not disputed that these defendants are within the meaning of public office, officer or station. SHPDB's duties under the law are set forth in the federal statute and regulations, and its agreement to carry out the federal requirements. SHPDB is not free to do as it wishes, it must comply with the law. SHPDB had no authority to "settle" Americare's administrative appeal except in accordance with law.

In connection with initial applications for Section 1122 approval, 42 U.S.C.S. Section 1320a–1 and 42 C.F.R. Sections 100.101 to 100.109 (1984) require certain procedures to be followed. These procedures include specified notices with specified time limits. One of the purposes of notice is to encourage competing applications which are reviewed comparatively by a local agency, in this case HSA, which makes recommendations to SHPDB. There is no claim that these procedures were not followed in connection with Americare's and Pilot's initial proposals. Mandamus was issued because these procedures —notice, an opportunity for competing applications and HSA and SHPDB review of any competing applications—were not followed in connection with the settlement between Americare and SHPDB. If the procedural requirements applied to the settlement, the writ was proper.

In assessing Section 1122 applications, SHPDB considers "bed ceilings" established by projected need. At the time of the initial applications, the projected bed need for ICF was 90. Pilot applied for approval of 90 ICF. Americare originally applied for 96 ICF and 24 SNF. This was

changed, prior to SHPDB's decision, to 84 ICF and 36 SNF.

HSA reviewed the competing applications of Americare and Pilot on the basis of a projected need for 90 ICF. However, SHPDB's decision of June 6, 1983, which approved Pilot's application and disapproved Americare's, was on the basis of 162 ICF, an increase in the projected need of 72 ICF.

Thereafter, Americare took the administrative appeals identified in our discussion of the first issue. Those appeals were dismissed by the hearing officer and a settlement between Americare and SHPDB was approved, over Pilot's objection. The settlement was that SHPDB approve a capital expenditure by Americare for 72 ICF, 24 SNF and 24 personal care beds. The personal care beds are not subject to Section 1122.

The trial court found that the additional 72 ICF were not available when Americare and Pilot made their initial applications.

The trial court found that SHPDB summarily granted approval to Americare for 72 ICF without notice to any interested party that the beds were available "without the close scrutiny for local public comment, disclosure and hearings, and without affording other entities any opportunity to compete for approval to construct said beds." It found that Americare's proposal for a capital expenditure to construct 72 ICF, 24 SNF and the 24 personal care beds was a substantially different proposal than the initial proposal to construct 84 ICF and 36 SNF. It found that this different proposal "must be treated as a new application, subject to all of the procedures and the entire review process under section 1122 so that other entities receive notice of such proposal and an opportunity to compete with it [Americare] and that SHPDB takes [sic] into consideration the findings and recommendations of local agencies, including the HSA." As to the 72 ICF beds, it found that they "may not be awarded without allowing all interested persons to submit competing applications for such beds." It found that the settlement be-

tween Americare and SHPDB was "null and void" and that SHPDB had no authority to enter the settlement.

Americare attacks the findings referred to in the preceding paragraph, and additional findings, as unsupported by substantial evidence. Accordingly, it reviews the evidence as to each of the findings attacked. We need not review the evidence in relation to the findings made nor need we parse the findings to determine which are factual and which are really conclusions of law. The terms of the settlement are not disputed. If the approval given to Americare's proposal (the settlement) was subject to the procedures for obtaining approval of an initial application, SHPDB was required to follow those procedures. If required to follow those procedures, SHPDB made the settlement without authority, and the settlement was void because it was contrary to law.

Two undisputed facts are pertinent. They are (1) the procedures required for initial application were not followed; and (2) if Pilot had known at the time of its initial application that an additional 72 ICF were available it would not have limited its application to 90 ICF, but would have requested additional beds in its initial application. This second fact establishes that Pilot was a competitor for the 72 ICF beds awarded to Americare, without notice, without local review and without consideration of competing applications by SHPDB.

42 U.S.C.S. Section 1320a–1(g) defines "capital expenditure" as

an expenditure which, under generally accepted accounting principles, is not properly chargeable as an expense of operation and maintenance and which (1) exceeds $600,000 (or such lesser amount as the State may establish), (2) changes the bed capacity of the facility with respect to which such expenditure is made, or (3) substantially changes the services of the facility with respect to which such expenditure is made.

A similar definition appears in 42 C.F.R. Section 100.103(a)(1).

42 C.F.R. Section 100.103 explains the applicability of the definition. 42 C.F.R. Section 100.103(a)(2)(iii) applies the definition to changes in bed capacity: "[A] capital expenditure which 'changes the bed capacity' of a facility means a capital expenditure which results in any increase or decrease in licensed capacity under applicable State or local law * * *." 42 C.F.R. Section 100.103(a)(2)(v) applies the definition to changes in a proposed capital expenditure. We quote this subsection in full:

> (v) Any change in a proposed capital expenditure which itself meets the criteria set forth in this paragraph, shall, for purposes of this subpart, be deemed a capital expenditure; *Provided,* That an increase or decrease in the cost of a proposed capital expenditure which increase or decrease is not related to a change in bed capacity or a substantial change in services may, at the option of the designated planning agency, be exempt from review under this subpart.

■ 42 C.F.R. Section 100.103 states, with certain exceptions, that any capital expenditure is subject to the regulations. A change in a proposed capital expenditure that meets the criteria of 42 C.F.R. Section 100.103 shall "be deemed a capital expenditure." 42 C.F.R. Section 100.103(a)(2)(iii) applies to a capital expenditure "which results in any increase or decrease in licensed capacity * * *." Thus the proposed capital expenditure for a decrease of 12 ICF and 12 SNF beds was a capital expenditure subject to the Section 1122 review process. *Cf. Appeal of Behavior Science Institute,* 121 N.H. 928, 436 A.2d 1329 (1981).

SHPDB knew of this required review at the time it "settled" with Americare. Its agreement with the federal government, in effect at the time of the "settlement," identifies three situations where review is required: "If any one of these three conditions is met, review is required." One of the situations requiring review occurs when the capital expenditure "changes the bed capacity of the facility with respect to which such expenditure is made * * *."

Americare's contentions, which seek to avoid the result we have reached, and our answers, follow:

(a) There has been no change in bed capacity, that the total beds in its initial application and the total beds in the settlement are the same—120. This argument is spurious. The initial application sought approval of specified beds for two separate categories—ICF and SNF. *See* 42 C.F.R. § 100.102(e)(4) and (5) and 42 C.F.R. § 100.-103(a)(2)(iii). The initial application sought approval of 84 ICF and 36 SNF. The settlement approved 72 ICF and 24 SNF. The 24 personal care beds of the settlement were not subject to approval and, thus, were not to be counted in bed capacity requiring approval. For bed capacity requiring approval, the settlement decreased the bed capacity by 12 in each of two categories.

(b) The regulations, particularly 42 C.F.R. Section 100.103(a)(2)(v), apply only to proposed capital expenditures in connection with an existing facility, not a proposed facility. According to Americare there is an existing facility once an obligation is incurred for a proposed capital expenditure. This argument leads to the absurd result that the federal statute and regulations provide no limitation on the expenditure of federal funds for new facilities. Such a result is contrary to the purpose stated in 42 U.S.C.S. Section 1320a–1(a).

(c) The federal statute and regulations do not refer to settlement of an administrative appeal, therefore the settlement was not prohibited. Authority for the settlement is found in the implied powers of SHPDB. *Winston v. New Mexico State Police Board,* 80 N.M. 310, 311, 454 P.2d 967 (1969), states: "[T]he authority of the agency is not limited to those powers expressly granted by statute, but includes, also, all powers that may fairly be implied therefrom." (Citations omitted.) What Americare overlooks is that this implied power must be derived from the statute. SHPDB had no implied power to "settle" by approving a bed allocation to Americare

when the bed allocation was subject to statutory review procedures. *Cf. La Jara Land Developers, Inc. v. Bernalillo County Assessor,* 97 N.M. 318, 639 P.2d 605 (Ct.App.1982).

Americare's attempted appeal in No. 7933 is dismissed for lack of jurisdiction. The trial court's order making the writ of mandamus permanent is affirmed. Americare shall bear its appellate costs in both appeals.

IT IS SO ORDERED.

BIVINS and ALARID, JJ., concur.